IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOO SAN CHOI and CHOI ENTERPRISES, INC. and MINORITY BUSINESS ENTERPRISE LEGAL DEFENSE and EDUCATION FUND, INC., <br><br> Plaintiffs, <br><br> v. <br><br> D'APPOLONIA, DURA-BOND STEEL CORP., JOSEPH B. FAY CO., JOSEPH B. FAY, INC., SHAWN M. FAY, SR., ROBERT B. FAY, JR., WESLEY GRANDMONT, GREG O'HARE, JOHN HAUGHT, GREGORY D. SENSABAUGH, MICHAEL YABLONSKI, ST. PAUL FIRE AND MARINE INSURANCE CO., and SEABOARD SURETY CO., <br><br> Defendants. | Civil No. 06-1514 <br><br> Judge David S. Cercone <br> Magistrate Judge Francis X. Caiazza |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is recommended that Defendant Dura-Bond's Motion for Sanctions be granted.

**II. REPORT**

This dispute is based on a September 29, 2003 government contract awarded by the United States Army Corps of Engineers ("ACOE") to a minority-owned construction company, Choi

Enterprises, Inc. ("CEI"), in connection with the Chamber River Demolition Project ("the Project") at the Charleroi Locks and Dam in Belle Vernon, Pennsylvania. The Plaintiffs, CEI, its president and owner, Soo San Choi ("Choi"), and a national non-profit public interest organization, the Minority Business Enterprise Legal Defense and Education Fund ("MBELDEF"), filed suit on November 13, 2006, alleging that various corporate and individual Defendants violated federal civil rights laws and the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-68, by engaging in conduct intended to interfere with the Plaintiffs' right to meaningful participation in a Small Business Act Section 8(a) minority set-aside program.[1] Specifically, the Plaintiffs contend that soon after CEI was awarded the Project contract, the Defendants acted to "take over" the Project, reserving the majority of the work for themselves, using CEI as a "minority front." (Doc. 50 at p. 9).

On March 15, 2007, the Plaintiffs filed an Amended Complaint (Doc. 6) alleging: (1) that each of the Defendants, except for Michael Yablonski ("Yablonski"), violated their rights under 42

---

1. Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), authorizes the Small Business Administration ("SBA") to enter into procurement contracts with other federal agencies and to subcontract performance to small businesses owned by individuals who are deemed socially and economically disadvantaged.

U.S.C. § 1981;[2] (2) that each of the Defendants, except Yablonski, violated Plaintiffs' rights under 42 U.S.C. § 1982; (3) that each of the Defendants conspired to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. § 1985; (4) that Defendants engaged in discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; and (5) that Choi and CEI were injured in their business and/or property as a result of Defendants' participation in activity proscribed by RICO.

Motions to Dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) were filed on behalf of Defendants Joseph B. Fay Co. ("Fay Co."), Joseph B. Fay, Inc., Shawn M. Fay, Sr., Robert B. Fay, Jr., Wesley Grandmont ("Grandmont"), Greg O'Hare ("O'Hare"), John Haught ("Haught"), Gregory D. Sensabaugh ("Sensabaugh"), Yablonski, Seaboard Surety Co. ("Seaboard"), St. Paul Fire and Marine Co. ("St. Paul"), and Dura-Bond Steel Corp. ("Dura-Bond"). (Docs. 21, 28, 29, 30, 31, 32, 33, 34, 35, and 44). A Motion for a More Definite Statement pursuant to FED. R. CIV. P. 12(e) was filed on behalf of D'Appolonia Engineering Division of Ground Construction ("D'Appolonia"). (Doc. 40). On July 9, 2007, while these motions were pending, Defendant Dura-Bond filed a Motion for Sanctions pursuant to FED. R. CIV. P. 11.

---

2. The Plaintiffs also allege in Count I that the "Defendants' conduct also meets the standard for common law tortious interference with contract." (Doc. 6 at p. 21).

(Doc. 47). On July 10, 2007, this Court entered an Order denying, without prejudice, Defendant Dura-Bond's Motion for Sanctions pending resolution of the other Defendants' Motions to Dismiss, and leaving open the opportunity for Dura-Bond, if appropriate, to file a renewed motion.

On October 15, 2007, this Court issued a Report and Recommendation (Doc. 61) in which it recommended that the Defendants' Motions to Dismiss be granted with prejudice. Further, this Court recommended that Defendant D'Appolonia's Motion for a More Definite Statement (Doc. 40) be evaluated as a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), and that its Motion to Dismiss be granted with prejudice. Subsequently, on November 5, 2007, Defendant Dura-Bond renewed its Motion for Sanctions pursuant to FED. R. CIV. P. 11. (Doc. 64). A Response was filed by the Plaintiffs on November 16, 2007 (Doc. 65), and Defendant's Reply followed on November 19, 2007. (Doc. 66).

Defendant Dura-Bond argues that Rule 11 sanctions are warranted - at least with respect to Dura-Bond - because the Plaintiffs' Amended Complaint was "frivolous, meritless and objectively unreasonable under the circumstances." (Doc. 47 at p. 1). After careful consideration, this Court agrees.

III. **The Applicable Law**

Courts are mandated to give the Federal Rules of Civil Procedure their plain meaning. Business Guides v. Chromatic

Comm., 498 U.S. 533, 541 (1991) (internal citations omitted). Federal Rule of Civil Procedure 11 sets out the standard counsel and unrepresented parties must satisfy when filing pleadings, motions, or other documents. Whenever an attorney or an unrepresented party files a pleading, written motion, or any other document, he or she is certifying to the best of his or her knowledge, information, and belief, formed after reasonable inquiry under the circumstances, that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary or needless increase in the cost of litigation;
> (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Acevedo v. Monsignor Donovan High School, 2006 U.S. Dist. LEXIS 64490, *4-5 (D.N.J. Sept. 11, 2006); FED. R. CIV. P. 11(b). This rule can be judicially viewed as "impos[ing] on counsel a duty to look before leaping" or as a "litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986).

Stated differently, Rule 11 requires that an attorney who files a complaint certify that there is a reasonable basis in fact and law for the claims. The clear purpose of the rule is to discourage the filing of frivolous, unsupported, or unreasonable lawsuits. Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1090 (3d Cir. 1988).

In this Circuit, "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991); *see also*, Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3d Cir. 1988)(holding that "the standard for testing conduct under Rule 11 is reasonableness under the circumstances.")(citing Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987)). "Reasonableness" in the context of Rule 11 has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." Ford Motor Co., 930 F.2d at 289; Business Guides, 498 U.S. at 551; CTC Imports & Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991). Significantly, the moving party is not required to make a showing of bad faith. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995). An "empty head, pure heart" excuse cannot be used by the accused party as justification for filing a frivolous motion. Acevedo, 2006 U.S.

Dist. LEXIS 64490 at *5-6; *see also*, Langer v. Monarch Life Ins. Co., 966 F.2d 786, 810 (3d Cir. 1992). To comply with the mandates of Rule 11, counsel is required to conduct a "reasonable inquiry into both the facts and law supporting a particular pleading." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 187 n.7 (3d Cir. 2002).

Applying this standard, the Court evaluates each count in Plaintiffs' Amended Complaint in turn. Because each count was already addressed at length in this Court's Report and Recommendation (Doc. 61), reference is made to the prior findings and repeated here only as is necessary.

## IV. The Allegations Pled Against Dura-Bond

The factual allegations set out in the Amended Complaint relating to Defendant Dura-Bond are sparse at best. When the Project was awarded, the initial welder who had provided Fay Co. with a price for the fabrication of the struts was unable to perform. Going forward, Fay Co. preferred to use Dura-Bond to complete the work, while CEI promoted another firm. Yet CEI contacted Dura-Bond directly to obtain a copy of its price for the struts. Eventually, although Fay Co. urged Choi to select Dura-Bond, CEI placed the order for struts with another company. (Doc. 6 at ¶¶ 88-92).

(a) Count One

Count I of the Amended Complaint relates to the Defendants'

alleged violation of 42 U.S.C. § 1981. (Doc. 6 at p. 21). To establish a right to relief under Section 1981, a plaintiff must show: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in Section 1981, including the right to make and enforce contracts. <u>Pryor v. National Collegiate Athletic Ass'n.</u>, 288 F.3d 548, 569 (3d Cir. 2002)(quoting <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 797 (3d Cir. 2001)). In Count I, the Plaintiffs allege as follows:

> The actions of Fay Co., its agents, servants, employees and representatives, including...Dura-Bond...as described hereinabove, were willful, deliberate and intentionally discriminatory in depriving Plaintiffs of their rights under the statute.

(Doc. 6 at p. 22, ¶ 101). Under the applicable Rule 11 standard - "reasonableness under the circumstances"- the allegations pled against Dura-Bond cannot pass muster. The sole act attributed to Dura-Bond was its response to a request for a strut price quotation. As this Court stated in its Report and Recommendation, "this act - even when coupled with the bald assertion that Dura-Bond somehow acted as Fay Co.'s 'agent' or 'representative'- is clearly inadequate to raise even a wisp of racial animus on the part of Dura-Bond, [nor does it] suggest that Dura-Bond intentionally engaged in race discrimination by frustrating CEI's

-8-

ability to make or enforce a contract." (Doc. 61 at p. 19).

Moreover, the Plaintiffs contradict themselves in their Opposition to Dura-Bond's Renewed Motion for Sanctions by claiming to have conducted a lengthy investigation of the factual and legal bases for each claim. (Doc. 65). They further state that "without Choi's authorization or knowledge, Fay Co. retained [Dura-Bond] to perform portions of the Project." (Doc. 65 at p. 8). The Amended Complaint, in clear contrast, states only that Fay Co. "strongly encouraged Choi to consider using Dura-Bond." (Doc. 6 at p. 20, ¶ 91). Despite Fay Co.'s urging, Choi eventually placed the order for the struts with a different company (Id. at ¶ 92). That said, nothing in the Amended Complaint suggests even remotely that Dura-Bond racially discriminated against the Plaintiffs, and any contention to the contrary is decidedly unreasonable under the circumstances.

(b) Count Two

Count II of the Amended Complaint purportedly states a cause of action pursuant to the provisions of 42 U.S.C. § 1982. (Doc. 6 at p. 21). The elements of a claim made under Section 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property," are virtually identical to those mandated under 42 U.S.C. § 1981. As the Court stated in

its Report and Recommendation, similar to the Section 1981 claims, the Plaintiffs failed to raise "even an inference that any of the Defendants were motivated by racial animus or engaged in intentional racial discrimination." (Doc. 61 at p. 26). This is especially true for Dura-Bond who, after quoting a price to Choi, was not selected to participate in the Project. Viewing the actions commenced against this Defendant, the Plaintiffs cite nothing suggesting that the allegations leveled against Dura-Bond were reasonable at the time the Amended Complaint was filed, or that they have any basis in law or fact. A price quote standing alone is patently insufficient to trigger liability under either Section 1981 or 1982.

(c) <u>Count Three</u>

The claims in Count III are premised on 42 U.S.C. § 1985(3), which provides, in relevant part:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in her person or property, or deprived or having and exercising any right or privilege or a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages, occasioned by such injury or deprivation, against any one of more of the

conspirators.

As the Court explained in its Report and Recommendation, the predicate of Section 1985(3) liability is conspiracy. (Doc. 61 at pp. 28-29). It is well-established that central to any conspiracy action are specific factual allegations claiming that "there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." Startzell v. City of Philadelphia, 2007 U.S. Dist. LEXIS 4082, *61 (E.D. Pa. Jan. 18, 2007)(internal citations omitted). A close review of the Amended Complaint reveals that it is devoid of any allegations claiming that the Defendants shared an understanding that they would act in concert to discriminate against the Plaintiffs on the basis of his race. The facts pled here, at least as far as Dura-Bond is concerned, would not allow a reasonable person to conclude that Dura-Bond was acting in concert with the other Defendants toward *any* end. Dura-Bond's quote of a price bid to Choi - its *only* involvement in this case - is insufficient to involve them in a plotted conspiracy.

(d) Count Four

In Count IV the Plaintiff alleges that the Defendants engaged in discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (Doc. 6 at p. 24). Section 2000d states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from

> participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

A plaintiff attempting to state a claim under Title VI must allege that: (1) he or she is a member of a racial minority; and (2) the defendants acted, on the basis of the plaintiff's race, to exclude him or her from participating in or benefitting from an activity or program receiving Federal assistance. Parenthetically, the entity alleged to have engaged in the discriminatory conduct must be the recipient of Federal funds. *See, e.g.,* <u>Baker v. Board of Regents of State of Kansas</u>, 991 F.2d 628, 631 (10th Cir. 1993); <u>Burch v. WDAS AM/FM</u>, 2002 U.S. Dist. LEXIS 12290, *16-17 (E.D. Pa. June 28, 2002)(internal citations omitted).

As the Court has already discussed earlier here, and as it recognized at length in its Report and Recommendation, the Plaintiffs are unable to point to any evidence of racial discrimination involving Dura-Bond. The relevant facts alleged in the Amended Complaint - that Choi, although encouraged by Fay Co. to accept a bid from Dura-Bond, eventually hired another company - have no connection whatsoever to a racial discrimination claim. Moreover, as the Court explained in its Report and Recommendation, the Plaintiffs do not even allege that Dura-Bond is the recipient of Federal funds, thereby failing to establish a basic element of their claim. (Doc. 61 at p. 32).

Considering Dura-Bond's limited involvement here, no reasonable interpretation or extension of existing law suggests that Dura-Bond acted in a racially discriminatory manner in violation of 42 U.S.C. § 2000d.

(e) Counts Five and Six

Finally, Counts V and VI of the Amended Complaint relate to the Defendants' alleged participation in activity prohibited by RICO. (Doc. 6 at ¶¶ 117-135). The elements required to make out a successful RICO claim are discussed at length in the Court's Report and Recommendation, and are not repeated here. (Doc. 61 at pp. 35-40). It suffices to say that the Plaintiffs have failed to allege the necessary elements of a RICO claim. Of particular import, at least as far as Dura-Bond is concerned, are the allegations of mail and wire fraud set out in Paragraphs 128a-q, and 133a-h of the Amended Complaint. (Doc. 6). Even in these sections, the Plaintiffs allege only that Dura-Bond quoted a price for the manufacture of struts but was not selected as a sub-contractor. These allegations fail to establish even one predicate act of racketeering activity, much less a pattern. In fact, not one of the Plaintiffs' alleged injuries is fairly traceable to Dura-Bond.

V. **Summary**

The purpose of Rule 11 is to "target []abuse, making sanctions appropriate only if the filing of the complaint [or

other paper] constitute[s] abusive litigation or misuse of the court's process." Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994)(internal quotations and citations omitted); Ford Motor Co., 930 F.2d at 289; Gaiardo, 835 F.2d at 483. Stated differently, "Rule 11 is aimed at curbing the abuses of the judicial system, and intended to discourage the filing of frivolous, unsupported, or unreasonable claims." Tally v. City of Atlantic City New Jersey, 2007 U.S. Dist. LEXIS 49486, *10 (D.N.J. July 10, 2007).

In order to demonstrate that a filing was not frivolous, unsupported, or abusive, counsel must show that there was a "reasonable investigation of the facts and a normally competent level of legal research to support the presentation" of a claim. Lieb, 788 F.2d at 157. Significantly, the extent to which the legal claim or theory of the party opposing sanctions has been judicially endorsed in other cases - even in dissent - is evidence that the position is warranted by existing law. Gaiardo, 835 F.2d at 485-86.

Here, Plaintiffs' counsel claims to have conducted a lengthy and exhaustive investigation of the factual and legal bases of the asserted claims by researching and recreating, in detail, the events giving rise to this dispute, including not just a sparse summary of the events, but rather a collection of dates, places, and statements made by various witnesses. (Doc. 65 at pp. 1 and 8). Although the Amended Complaint sets out a number of factual

details, none relate in any relevant way to Dura-Bond and its involvement in this lawsuit. Once again, Dura-Bond allegedly quoted a price for struts to Choi, who decided to contract with another company. Failing in its sole bid to become part of the Chamber River Demolition Project, Dura-Bond walked away and was never heard from again – until this lawsuit was commenced.

In terms of a legal basis for the allegations pled against Dura-Bond, the Plaintiffs claim to have conducted an "extensive overview of the law." (Doc. 65 at p. 9). That search revealed <u>Edwards & Associates, Inc. V. Black & Veatch LLP</u>, 84 F. Supp.2d 1182 (D. Kan. Jan. 7, 2000), a case, according to the Plaintiffs, "strikingly similar" to the facts here. <u>Id.</u> In <u>Edwards</u> a minority-owned engineering firm, Edwards & Associates, Inc., filed an action against a majority-owned contract firm, Black & Veatch LLP. The district court denied Defendant's Motion for Summary Judgment, reasoning that the Plaintiff had made out a prima facie case of discrimination. The facts in <u>Edwards</u>, however, are clearly distinguishable from the facts alleged against Dura-Bond here. In <u>Edwards</u>, the Plaintiff, a sub-contractor, sued the Defendant, a general contractor, alleging that its role in the relevant project was substantially reduced from what was originally promised and later assigned to non-minority contractors. Here, Dura-Bond had no role in the assignment of work. Its sole involvement in the project was to

submit a bid for the fabrication of struts which was rejected by Choi.

## VI. The Recommended Sanction

It is well-established that Rule 11 Sanctions are warranted only in "exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous." Ford Motor Co., 930 F.2d at 289. Moreover, a review of Third Circuit case law reveals that a court should refuse to impose sanctions unless, as here, the moving party can show a complete lack of factual or legal support for a claim. *See, e.g.,* Schering Corp. v. Vitarine Pharm., Inc., 889 F.2d 490 (3d Cir. 1989); Pensiero v. Lingle, 847 F.2d 90 (3d Cir. 1988). Rule 11 Sanctions, parenthetically, are never appropriate when a party's "only sin was being... unsuccessful." Arab African International Bank v. Epstein, 10 F.3d 168, 175 (3d Cir. 1995); Teamsters Local Union No. 430, 841 F.2d at 68. That said, the Court, although it has strained to find otherwise, is unable to identify a theory or reasonable extension of existing law that would support this lawsuit against Dura-Bond.

Once a court determines that Rule 11 has been violated, it retains broad discretion in determining appropriate sanctions. Langer, 966 F.2d at 811. The court must impose sanctions that are "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Tally, 2007 U.S. Dist. LEXIS at *12; Balthazar v. Atlantic City Med. Ctr., 137 Fed.

Appx. 482, 490 (3d Cir. 2005); FED. R. CIV. P. 11(c)(2). Here, the Court finds that monetary sanctions are inappropriate. Instead, the Court concludes that the public filing of this document is sufficient.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by January 25, 2008. Responses to objections are due by February 4, 2008.


January 9, 2008                          s/Francis X. Caiazza
                                                 Francis X. Caiazza
                                                 U.S. Magistrate Judge


cm: All parties of record